**CEDAR GROVE LIME COMPANY, Inc., a dissolved corporation, by its directors and stockholders, Fred Fleming, W. E. McDonald, James R. Johnson, and Frank Miller**

v.

**UNITED STATES of America.**

**Melba FLEMING, Executor of the Estate of Fred Fleming, as transferee of Cedar Grove Lime Company, Inc., a dissolved corporation**

v.

**UNITED STATES of America.**

**Civ. Nos. 2878, 2879.**

United States District Court
M. D. Tennessee,
Nashville Division.

Nov. 16, 1965.

Joe W. Henry, Jr., Henry & Henry, Pulaski, Tenn., James W. Allen, Nashville, Tenn., for plaintiffs.

James F. Neal, U. S. Atty., Nashville, Tenn., J. W. Watkins, U. S. Dept. of Justice, Washington, D. C., for defendant.

GRAY, District Judge.

Plaintiffs brought these actions to recover certain sums paid by them as income taxes and interest for the year 1952. In 1952, the Cedar Grove Lime Company, Inc., operated a quarry in Giles County, Tennessee. On its tax return for that year it took a deduction for depletion on the material which it mined at the rate of ten percent. Later, after it was dissolved, Cedar Grove, by its former stockholders, filed a claim for refund in which it asserted that it was entitled to a fifteen percent rate for depletion. This is the basis for the first suit herein, Civil Action No. 2878. The Internal Revenue Service determined that the depletion allowance which was proper was only five percent and, the assets of Cedar Grove having been transferred to Fred Fleming, an assessment was made against him for the difference. He paid this assessment and the second suit, Civil Action No. 2879, is based on his claim for refund of the amount paid.

All parties agreed, prior to the trial and at the trial, that the only question to be resolved was whether the material mined in 1952 was chemical limestone as defined by the pertinent regulation. It was further agreed that the pertinent definition of chemical limestone is as follows:

> "Limestone which contains a calcium carbonate and magnesium carbonate content totaling 95% or higher by weight. For this purpose, the term 'limestone' does not include any carbonate material which is identifiable as a mineral falling within a more specific classification such as dolomite, marble, oyster shells, or clam shells."

Two highly qualified geologists testified, Dr. Richard G. Stearns for the plaintiffs, and Dr. William E. Ham for the defendant. Each had taken samples of rock from the face of what is shown in the record as the "East quarry," which was apparently the quarry in operation in 1952.

The samples taken by Dr. Stearns were taken from the lower twelve feet of the face of the quarry, and the samples taken by Dr. Ham were taken from the lower thirty feet of the face of this quarry. All of this sampling was done more than ten years after 1952.

The chemists who analyzed the samples taken by Dr. Stearns and Dr. Ham both testified. This testimony disclosed that the sample offered by the plaintiffs, taken by Dr. Stearns, showed a carbonate content of 97.96 percent. The chemist who examined the sample taken by Dr. Ham testified that it had a carbonate content of 94.3 percent. However, on cross-examination, he admitted that his computation was in error and that the correct carbonate content of the sample taken by Dr. Ham was 94.5499 percent. The court cannot conclusively determine exactly how far up the face of this quarry operations were being conducted in 1952. At the time the samples were taken, the face of this quarry was some seventy feet in height. Dr. Stearns testified that he was convinced that he had sampled all of the rock which could possibly have been quarried in 1952, and Dr. Ham stated that he was informed by some employee on the site as to where the sample should be taken and followed such instructions.

Other samples were taken by these witnesses and also by other witnesses but, with the possible exception of one sample taken by plaintiffs' witness Allen, all such samples were either from stockpiles or from another quarry face known as the "West quarry."

Five of these samples were taken by plaintiffs and they introduced testimony, without objection, as to the chemical analysis of each sample. These analyses showed a carbonate content ranging from 96.75 percent to 99.75 percent.

The defendant had taken three other such samples and introduced testimony, without objection, as to the chemical analysis of each such sample. These analyses of defendant's samples showed a carbonate content ranging from 94.5447 percent to 96.2411 percent, averaging in excess of 95 percent.

The court recognizes that the probative value of these additional samples and the testimony relative to their chemical content is lessened by the sources of the samples. However, both parties apparently introduced this evidence in an attempt to throw additional light on the question involved. This testimony has been considered by the court accordingly.

In view of the fact that the two prime samples, one by the plaintiffs and one by the defendant, showed an average carbonate content of substantially in excess of 95 percent, and that all of the other samples testified to by both parties showed an average carbonate content in excess of 95 percent, the court finds that the material mined by Cedar Grove in the year 1952 met the requirements for chemical limestone.

Counsel will submit appropriate order within twenty days from the date of entry of this Memorandum.